RAFAEL B. PÉREZ MERCADO, Petitioner and Appellant, *v.* JUAN T. PEÑAGARÍCANO, ECONOMIC STABILIZATION ADMINISTRATOR, Defendant and Appellee.

No. CE-64-30.     Decided June 30, 1966.

*R. B. Pérez Mercado, pro se. Carmelo Ávila Medina* for petitioner. *Miguel Franquiz Ventura, Eduardo A. Ruiz,* and *José E. Rodríguez Rosaly* for appellee.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Rafael B. Pérez Mercado, appellant herein, alleges that it is not proper to deduct the sum of $155.94 from the rent of an apartment owned by him, occupied by Dina Orlando for expenses of repairs made by the tenant with the authorization of appellee, Juan T. Peñagarícano, who also authorized that the said sum be collected from the owner of the property in monthly deductions of $22.26.

The main ground adduced in support of the impropriety of the deduction is that the repairs were authorized by order of appellee of December 26, 1961, and made by the tenant while the property in question was owned by Rafael Bernaola, and that the order authorizing the deduction of $22.26 from the monthly rental which Mrs. Orlando paid the landlord was issued on June 6, 1963, when the petitioner, appellant herein, was already the owner of the property by deed of judicial sale executed on May 17, 1962.

It appears from appellee's administrative record of the dwelling in question that the repairs were made between February and March 1962, when petitioner had not yet acquired the property. Appellee's order of February 28, 1964, overruling petitioner's objection to the deduction in question, reads: "Repairs amounting to $80.94 were still pending on the date the new landlord, Pérez Mercado, acquired the property." This is why petitioner alleges that only the sum of $69.06 has been spent in repairs, so that the sum of $80.94 for pending repairs is not additional to the item of repairs made by the tenant at a cost of $155.94. The record shows, contrary to petitioner's contention, that the sum of $80.94 for pending repairs is additional to the repairs made at a cost of $155.94, which is involved in this appeal, wherefore

the question is not one of repairs made after petitioner acquired the property.

The trial court to which petitioner appealed from the order of the Economic Stabilization Administrator of February 28, 1964, affirmed the same on the ground that according to §§ 10[1] and 15 of the Reasonable Rents Act (17 L.P.R.A. §§ 190 and 205), it was necessary to authorize the tenant to make the repairs which the landlord refused to make upon demand by the Administrator and to deduct the amount thereof from the rent, and that such deduction is proper despite a change of owner.

Feeling aggrieved, petitioner appealed by way of certiorari and alleges that the judgment in question as well as the order of the Administrator are erroneous because (1) the law does not authorize the Administrator to compel a subsequent owner to pay repairs made for the benefit of a former owner; (2) that such determination implies that the Administrator has legislated administratively; (3) that petitioner is a third-party mortgagee; (4) that the repairs made by the tenant constitute a credit against the person who owns the property at the time of making the repairs, but do not constitute an encumbrance on the property; and (5) that after the tenant was notified of the change of owner, she had no authority to make repairs on the account

---

[1] Section 10 of the Act, which expressly provided that the Administrator could authorize the tenant to make the necessary repairs which the landlord failed to make after having been requested to do so, and that the Administrator could authorize the tenant to deduct the same from the rent in the manner determined by him, was amended by Act No. 67 of June 19, 1964, and at present reads as follows:

"The landlord is bound to make all necessary repairs to the rented property during the period of lease, in order to maintain it in a condition suitable for the use to which it has been devoted, and to maintain all its services in operation. The Administrator is hereby authorized to establish through regulations the standards that should prevail to comply with this provision. The landlord shall not be required to make repairs which may become necessary because of malicious damages caused by the tenant." (17 L.P.R.A. § 190, Supp. p. 160.)

of the new owner and did not avail herself of the procedure for carrying out repairs.

1. Petitioner contends that the Reasonable Rents Act should be construed and restrictively applied, since it curtails the ownership right of the owner, wherefore the courts may not enlarge the provisions of § 10 of the Reasonable Rents Act in order to authorize deductions against subsequent owners as if such deductions were a preferred lien, notwithstanding the law is silent on the matter; that § 15 of the Reasonable Rents Act[2] on which rests the trial court's judgment merely provides that the limitations, rights, and duties of the owner which have been fixed by the Act in connection with "leased property" bind every subsequent owner, but does not provide that the acquirer shall be, or be held by the Administrator, responsible or become a debtor in favor of the tenant for personal debts or obligations of the former owner toward the tenant by reason of the lease. It is admitted that by virtue of the aforesaid § 15, the subsequent owner is bound by the lease for the rent fixed by the Administrator as well as to make the repairs, and if he fails to do so after having been requested and heard, he is also bound by the authorization of the Administrator to the tenant to carry them out and to deduct the cost thereof from the rent; that it is implied that the owner bound to reimburse to the tenant the cost of the repairs is the owner who refused to

---

[2] Section 15 of the Reasonable Rents Act, 17 L.P.R.A. § 205, Supp. p. 169, reads as follows:

"(a) Every person acquiring a leased property shall be subject to the terms of sections 181–214a of this title, and may not claim any rights other than those herein established for the original owner.

"(b) In all cases of sale, assignment, or alienation of a leased property, the lease contract of the tenant with the previous owner shall be understood as subsisting and as subject to the extension specified in section 192 of this title.

"(c) Neither may the person acquiring a leased property file proceedings against the tenant, for eviction, unlawful detainer, or to recover the possession of said property except for the causes and under the terms and conditions set forth in sections 193 to 202 of this title."

make them; that repairs do not constitute an unjust enrichment for the new landlord but for the former one, since the latter unavoidably had to sell, and the assumption is that the value of the property sold was paid at the auction sale; that the Administrator is without power to impose on the new landlord obligations on account of repairs which benefited the former landlord, since a hidden lien would in fact be constituted on the property.

■ According to the Declaration of Policy of the Reasonable Rents Act, the legislation is necessary to insure adequate protection to the people of Puerto Rico with respect to the serious housing problem and in order *"to prevent speculation on the part of landlords, to guarantee reasonable rents, and conveniently to protect the rights of tenants."* (Italics ours.) The purpose of the legislation is that "all the terms and conditions for the use or occupancy of such properties [dwellings and commercial buildings] shall be fair and reasonable," and that "every . . . term or condition . . . as are abusive, unfair, unreasonable, or oppressive, are . . . declared to be contrary to public policy." These purposes and norms have been reaffirmed by this Court on several occasions. *Martínez Rivera* v. *Peñagaricano, Adm'r*, 90 P.R.R. 529 (1964); *Núñez* v. *Rodríguez Rolán*, 89 P.R.R. 48 (1963); *Martínez* v. *Llavat*, 86 P.R.R. 223 (1962). Therefore, a rule of restrictive interpretation of the Act is not imperative. On the contrary, its terms should be construed in such a way as to accomplish its aims and purposes and to carry out the public policy consecrated therein without violating its letter.

■ As stated by petitioner himself, according to § 15 of the Reasonable Rents Act, the acquirer of rented property is bound by the limitations, rights, and duties of the former owner in connection with the said property. In the case under consideration the petitioner acquired the property

whose value was enhanced by the repairs made by the tenant by authorization of the appellee, which provided that "This Office shall authorize in due time the deduction of the expenses incurred from the rental in such manner as it may deem more convenient." If petitioner were not bound by that deduction, the public policy consecrated in the Reasonable Rents Act to conveniently protect the rights of the tenant would be thwarted. Contrarily to the provisions of § 8 of the Act (17 L.P.R.A. § 188) that the reimbursement of excessive rent must be made only by the landlord who charged them, in the case of deductions from the authorized rent to cover the cost of the repairs which the landlord refuses to make, the Act only provides that such deduction shall be made from the rent, without providing, as is properly provided in the case of reimbursement of excessive rent, that the deduction shall be the obligation of a particular landlord. As stated by the trial judge, if the appellee had elected to authorize the tenant to pay the monthly rent reduced by one-twelfth part of the cost of the repairs—as provided by the Rent Regulation, 17 R.&R.P.R. § 186–33(a)(4)[3]—there is no question that petitioner would be bound to accept the rent so reduced. Therefore, the authorized deduction of the cost of the repairs made by the tenant under circumstances such as those in the case under consideration should bind the person who acquires the property from the landlord who refused to carry out the repairs on the property.

■ We are not dealing with a preferred lien which, because it was not recorded nor is recordable, does not affect the subsequent acquirer of the dwelling. Nor is it a hidden lien. It is rather a right of the tenant under special legis-

---

[3] Section 186–33(a)(4) contains a final provision which reads as follows:

"Should it be impossible for the tenant to effect the repairs, then a reduction of the monthly rent shall be made by the Administration, equivalent to 1/12 of the amount of the repairs."

lation enacted for the aims and purposes therein defined, as stated hereinabove. The subsequent acquirer of the property has available means, whether in the records of the dwelling in the Economic Stabilization Administration or with the tenant and the former owner, to inform himself in due time of situations such as those in this case. Nor may it be said that the repairs only benefited the former landlord. They actually benefited the property which was afterwards acquired by petitioner through a mortgage foreclosure proceeding.

Since the cost of $155.94 exceeds by $5.94 the sum authorized for repairs in appellee's order of December 26, 1961, his order of June 6, 1963 should be modified in order that the deduction from the rent be $150 instead of $155.94. Any repairs which may still be pending in the dwelling should be consulted with the petitioner as its present owner.

The judgment rendered in this case will be modified as hereinabove stated and, as thus modified, it will be affirmed and the case remanded to the Superior Court, San Juan Part, with instructions to order appellee in a manner consistent with the pronouncements herein.

Mr. Justice Blanco Lugo concurs in the result and reiterates that in this case the writ was improperly issued.